UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01077-JDB-cgc |
| | ) | |
| RECIE YANDERS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On April 21, 2017, Plaintiff, Raymond Wright, who is incarcerated at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (Docket Entry ("D.E.") 1.) On May 1, 2017, Plaintiff paid the $400 case initiation fee. (D.E. 5.) The Clerk shall record the Defendants as Recie Yanders, former Medical Administrator at NWCX; Dr. FNU Tucker, Medical Director at NWCX; Natalie Voss, Medical Administrator at NWCX; Mike Parris;[1] Kenneth Williams, Director of Health Services for the Tennessee Department of Correction (TDOC); and Jason Woodall, Deputy Commissioner of Operations at TDOC.

Wright alleged that he suffers from degenerative bone and disk disease, which leaves his bones and vertebrae fragile and brittle. (D.E. 1 at PageID 4.) The inmate stated that on June 25, 2013, while he was incarcerated at the TDOC's DeBerry Special Needs Facility, Dr. Michael

---

[1] Mike Parris is now Warden of the Morgan County Correctional Complex, not NWCX. The current Warden of NWCX is Shawn Phillips. https://www.tn.gov/content/tn/correction/sp/state-prison-list/northwest-correctional-complex.html.

Schlosser prescribed him a "Special Soft Medical Mattress," which comes with a fire-retardant cover. (*Id.*) Plaintiff was transferred to the Northeast Correctional Complex in July 2014. (*Id.*) He was not provided the mattress there because of alleged "security concerns," despite having filed "several grievances." (*Id.* at PageID 4–5.) On May 20, 2015, Wright was transferred to NWCX where, he alleges, he was to be provided with the mattress. (*Id.* at PageID 5.) After "several months," Plaintiff was not given the mattress, instead receiving two standard-issue mattresses, which he alleged fail to aid against possible fractures. (*Id.*) According to the inmate, Dr. Tucker ordered the soft mattress, but Yanders denied the request because the mattress presented a fire risk. (*Id.*) Wright filed further grievances at NWCX for the mattress. (*Id.*) In response, NWCX officials reiterated he would not receive the mattress due to the fire-safety concern. (*Id.*)

Plaintiff stated in the summer of 2016 he received a "gel mattress," which he claimed was worse for his condition than the standard-issue mattresses. (*Id.*) The inmate sent a letter to the Warden and the Medical Director in September or October 2016 regarding the fire-retardant cover that comes with the soft mattress but received no response. (*Id.*) Wright again grieved the assignment of the gel mattress in November 2016 but received no response. (*Id.*) Plaintiff characterized TDOC's treatment of his letters and grievances as receiving "the run-around." (*Id.*) The inmate additionally alleged he was medically prescribed suspenders to wear in 2009 but never received them at NWCX. (*Id.*)

Plaintiff also averred that doctors at Nashville General hospital told him to see a neurosurgeon in May 2016, but "due to a scheduling issue, that never materialized." (*Id.* at PageID 6.) He was instructed to use a wheel chair until he could see the doctor to prevent possible further damage from his condition. (*Id.*) Wright explained, however, that TDOC officials delayed a

wheelchair for four months, and that, at the time of his complaint, he had not yet seen the neurosurgeon. (*Id.*)

Plaintiff claimed that NWCX's failure to provide him the soft mattress and suspenders was "interfering with prescribed medical treatment" and was deliberately indifferent to his medical condition. (*Id.* at 5–6.) As a result of these inactions, he stated his condition had worsened. (*Id.* at 6.) Wright asserted that all Defendants have deliberately refused to provide him the soft mattress, using their concern of a fire hazard as a pretense to save money. (*Id.* at 1, 7.) In his lawsuit, the inmate seeks compensatory, punitive, and nominal damages from each Defendant in their individual and official capacities; reimbursement of the filing fee; and injunctive relief requiring the soft mattress or a transfer to a facility where he will be allowed the mattress. (*Id.* at 7.)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the assertions

"plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory contentions "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## ANALYSIS

42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Plaintiff alleges generally that all six Defendants have deliberately refused to provide him the soft mattress. However, he makes specific factual allegations against only Yanders, Tucker, and Parris. His other assertions speak generally about "prison officials" or the TDOC and NWCX. When a complaint fails to allege any action by a particular defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Because Plaintiff does not reference any specific action by Voss, Williams, or Woodall, his claims against those Defendants are DISMISSED.

To the extent the inmate brings suit against Defendants in their official capacities, those claims are considered made against their employer, TDOC. *Shabazz v. Centurion*, 17-1051-JDT-cgc, 2018 WL 1440985, at *2 (W.D. Tenn. Mar. 22, 2018) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Claims against the TDOC are, in turn, treated as ones against the State of Tennessee. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *accord Malone v. Tennessee*, No. 03-2869 B, 2005 WL 2671343, at *3 (W.D. Tenn. Oct. 19, 2005). The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment prohibits citizens from suing their own states in federal court. *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst*, 465 U.S. at 100; *see also Virginia Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.

But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, "a state is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. 58). Wright's official-capacity claims are therefore DISMISSED under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

That leaves Plaintiff's individual-capacity claims against Yanders, Tucker, and Parris. These allegations include that Yanders denied the request from Dr. Tucker to order a soft mattress for Plaintiff, and Warden Parris and Dr. Tucker did not respond to his letters about the fire-retardant cover for the mattress. Plaintiff contends that the denial of the soft mattress is a ruse to save money and that there is no fire hazard.

Wright's contentions amount to a claim for deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component of an Eighth Amendment claim, a prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The subjective component requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837–38.

The inmate has failed to state an Eighth Amendment claim. His complaint shows that he was provided medical treatment, including regular visits with a doctor, pain medication, physical therapy, and a recommendation for "a soft mattress." (D.E. 1-1 at 4.) That recommendation does not specify what kind of "soft mattress" should be provided. As a result, Plaintiff received a gel mattress at NWCX. He states the gel mattress was insufficient to address his condition, but dissatisfaction with treatment does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107. NWCX officials informed Plaintiff that the soft mattress he requested was not available at NWCX for fire-safety reasons. Wright insists that this explanation was an excuse to save money. Because Plaintiff provides no factual basis to support that claim, the Court need not accept it as true. *See Iqbal*, 556 U.S. at 679.

For the foregoing reasons, Plaintiff's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe

7

the right of access to the courts."). In this case, the Court concludes that Plaintiff should be given an opportunity to amend his complaint.

In conclusion, the Court DISMISSES Plaintiff's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). Leave to amend, however, is GRANTED. Any amendment must be filed within thirty (30) days after the date of this order.[2]

Plaintiff is advised that any amended complaint will supersede the original complaint and must be complete without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED this 27th day of February 2019.

    s/ J. DANIEL BREEN  
    UNITED STATES DISTRICT JUDGE

---

[2] On February 21, 2019, the Court received a letter addressed to the Clerk of Court in which Wright made allegations already addressed by this order, as well as some new claims. (D.E. 9.) If Plaintiff desires to pursue those claims, he needs to do so in his amended complaint, as set forth herein.